UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES EDWARD SEGARS, )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>GENE L. ISSACS, *et al.* )<br>)<br>Defendants ) | CAUSE NO. 3:05-CV-254 RM |

## OPINION AND ORDER

James Edward Segars, a *pro se* prisoner, filed a complaint pursuant to 42 U.S.C. § 1983. Under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. PRO. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *See* Weiss v. Colley, 230 F.3d 1027 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.
> In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is

> entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

Mr. Segars alleges that guards at the Cass County Jail used excessive force against him. He says he did not physically resist them, but he acknowledges that he persisted in verbally resisting and that he didn't comply with their direct orders.

> [W]hen Officer Bartling began screaming at me, I verbally protested and told him I would be willing to go to D-Block – mainly because by this time everyone was awake because of his yelling and maybe if I went to D-block someone would get to the bottom of Officer Bartling's abusive behavior.

Evidentiary Statement, docket # 6, exhibit 1 at 12. Mr. Segars alleges that Officer Bartling "poked me with his fingers hard in my chest. I then told him not to touch me and he said OK get up against the wall." Evidentiary Statement, docket # 6, exhibit 1 at 12.

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (citations and quotation marks omitted). Being poked in the chest is not repugnant to the conscience of mankind.

2

> I turned and walked back toward the wall – he continued to scream for me to face the wall even though I was facing the wall. I faced the wall closer, and he yelled for me to put my hands behind my back, I verbally protested that this was not necessary – at that time the female officer offered to mace me. I again turned and faced the wall and put my hands by my sides and back. Officer Bartling again yelled for me to put my hands behind my back , I turned my head and when I looked over my right shoulder, that's when I got a full blast of Mace in my face. I turned back to face the wall, and they continued to blast – causing the spray to deflect off the wall and get the rest of my face and neck. Officer Bartling then grabbed my left hand and put his elbow into my upper spine and leaned his body weight into me – pinning me against the wall. He proceeded to push my left hand, up toward the ceiling behind my back, at this point I raised my voice and told him "don't hurt my arm!" At that time Officer Bartling cuffed my left hand and grabbed my right hand and told me to shut up or get maced again. He then cuffed my right hand and squeezed it tight enough to affect the nerve strings in my thumb and forefingers. He then swung me around by the cuffs and pushed me toward the door.

Evidentiary Statement, docket # 6, exhibit 1 at 13-14. Mr. Segars did not move against the wall when ordered, nor did he place his hands behind his back as directed. He was warned that noncompliance would result in his being maced and so when he turned his head (rather than facing the wall with his hands behind his back) he was maced and forcibly restrained.

> Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. As the District Judge correctly perceived, such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted are relevant to that ultimate determination. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such

3

> wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.
>
> When the ever-present potential for violent confrontation and conflagration, ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators carries special weight. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly, in ruling on a motion for a directed verdict in a case such as this, courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley v. Albers, 475 U.S. 312, 321-322 (1986) (citations, ellipsis, and quotation marks omitted). This court will not second guess the decision of a guard who faced a noncompliant inmate who had been repeatedly told what to do and who had been warned that he could be maced. Mr. Segars refused to obey the commands that were given to him and the application of mace was not an unconstitutionally excessive use of force. Neither was it an excessive use of force to forcibly restrain him after he was maced and before he was removed from the room.

> They then escorted me forcibly to intake and pushed me into the padded cell. Bartling screamed for me to get down. I informed him of my injured leg and the fact that I cannot fully bend that knee, he proceeded to force me down using my handcuffed wrist like a handle. I got down on one knee by throwing my injured leg out to the side. He continued to try to force me to the floor, and I again told him I can't bend my knee, I finally twisted enough to drop to my right side, and he lifted and slammed my upper body trying to smash my face into the floor, I used my shoulder as a deflector and once I could straighten the left leg I could comply with his orders to get face down. This maneuver caused extreme stress to my bad knee and was very painful, and not to mention unnecessary if he would have just given me time and stopped trying to force me down. Once I was face down Officer Bartling put his knee in my lower back, kidney area and dropped his body weight on me. He yelled "you're down now!"

Evidentiary Statement, docket # 6, exhibit 1 at 14-15. Mr. Segars, an inmate with a recent history of noncompliance, was not complying with the order to get down on the floor in a restrained position where the guard could safely remove the handcuffs. Though it may seem that the officer used slightly more force was necessary and though it may seem that he was slightly less patient than he could have been, this court will not second guess the officer based on the facts alleged in this pleading. The officer described in the complaint was justified in using force to obtain compliance with his order and this complaint is merely an argument that superior alternatives existed.

      Next Mr. Segars alleges that the jail did not investigate his complaints about this incident and did not adequately respond to his grievances. He alleges that because of this, other inmates were injured. First, Mr. Segars cannot assert other inmate's rights  because he lacks standing to do so. "[S]tanding encompasses the general prohibition on a litigant's raising another person's legal rights . . .." Elk

5

Grove Unified School District v. Newdow, 542 U.S.1, 17 (2004) (quotation mark omitted). Second, the Constitution does not require that a prison or jail provide a grievance procedure nor that government employees respond to grievances. Jones v. Brown, 300 F. Supp. 2nd 674, 679 (N.D. Ind. 2003) ("[T]he First Amendment right to petition the government for a redress of grievances protects a person's right to complain to the government that the government has wronged him, but it does not require that a government official respond to the grievance.")

For the foregoing reasons, this complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915A.

SO ORDERED.

ENTERED: June   14  , 2005

                                                 /s/ Robert L. Miller, Jr.
                                              Chief Judge
                                              United States District Court